## OREGON-WASHINGTON R. & NAV. CO. v. WILLIAMS. *

(Circuit Court of Appeals, Ninth Circuit.   October 4, 1920.)

No. 3441.

1. **Limitation of actions** ⬅55(7)—**Right of action for obstruction of stream accrues at date of injury.**

   A right of action for damage to plaintiff's land from overflow of a river, caused by permanent obstructions built by defendant below plaintiff's land, *held* to accrue at the time of the injury, and not from the time the obstructions were built.

2. **Waters and water courses** ⬅171(2)—**One knowingly obstructing stream liable for resulting damage.**

   A railroad company, which filled in a side channel of a river through which it was obvious that the water flowed in time of flood, cannot claim exemption from liability for the flooding of land above because of such obstruction, on the ground that the freshet was so unprecedented as to be an act of God.

In Error to the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

Action at law by C. H. Williams, for himself and as administrator of the estate of Mabel Grace Williams, deceased, against the Oregon-Washington Railroad & Navigation Company. Judgment for plaintiff, and defendant brings error. Affirmed.

A. C. Spencer and J. F. Reilly, both of Portland, Or., and Hamblen & Gilbert, of Spokane, Wash., for plaintiff in error.

A. H. Featherstone, of Wallace, Idaho, and John P. Gray, of Cœur d'Alene, Idaho, for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The case shows that one Joseph Papineau was the owner of a certain quarter section of land in Shoshone county, Idaho, near the town of Cataldo, and opposite that portion of the railroad built by the predecessor in interest of the plaintiff in error where was constructed across the Cœur d'Alene river a long bridge and approaches thereto, including piling, fills, and a shear dam. At Cataldo, and a short distance from the Papineau land, the predecessor in interest of the plaintiff in error built a bridge across the river, consisting of one span of about 250 feet across the main channel, and a long approach thereto of piles, about 1,460 feet in length, which approach crossed an overflow or high-water channel of the river.

The predecessor in interest of the plaintiff in error also filled a considerable portion of the approach, including the high-water channel, with rock and earth approximately 15 feet in height, about 12 feet wide at the top, and sloping to a base of about 30 feet at the bottom, which fill was about 960 feet in length—leaving open for the passage of the water about 770 feet. The predecessor in interest of the plaintiff in error also constructed a shear dam of rock in the channel of the river and running from the bank in a diagonal direction a distance of

about 195 feet. The character of all of the work mentioned leaves no room for question that it was intended to be permanent.

The last of the work above referred to was done in the year 1908. In 1913 the waters of the river suddenly rose to an unusual height, and flooded and damaged the land of Papineau, and, the latter having subsequently died, an action was brought by the administrator of his estate, which reached the Supreme Court of Idaho and was by it decided February 24, 1916, on the trial of which action in the court below one of the principal controversies as to the facts—

"was waged around the question of whether the construction of the shear dam and the filling in of the pile approach of the bridge had in fact diverted the current of the Cœur d'Alene river and caused the damage complained of." Rogers v. Oregon-Washington R. & Nav. Co., 28 Idaho, 609, 614, 156 Pac. 98, 99.

In that action it was adjudged by the Supreme Court of the state that, the flow of the river having been impeded by the filled-in approaches to the bridge and the shear dam, and the water thereby thrown upon the land of Papineau, resulting in the injury complained of, the representative of his estate was entitled to recover, the cause of action not having accrued until the injury was sustained, from which time only the state statute of limitations began to run, and not from the time of the construction of the permanent impeding works of the railroad company.

Subsequently and during the last days of December, 1917, and the first days of January, 1918, the water of the river became again unusually high, during which time the channel left open by the railroad company was insufficient to carry all of it, and a portion thereof was impeded by the filled-in approaches to the bridge and the shear dam, and again thrown upon the same quarter section of land theretofore owned by the deceased, Papineau, which was thereby damaged to at least the extent that the recovery by the defendants in error was allowed in the court below—the amount thereof being conceded to have been reasonable by the plaintiff in error—there being likewise no question made respecting the acquirement by the defendant in error Williams individually and as administrator of the estate of his deceased wife of the property damaged and of the cause of action growing out of the jury complained of.

[1] Respecting the statute of limitations of Idaho pleaded and relied upon in bar of the action, it is enough to say that, as the latter was commenced within a few months of the infliction of the injury complained of, it is plain that the point is without any force, unless it be, as is contended on behalf of the plaintiff in error, that the commencement of the running of the limitation statute is to be taken as the time of the building of the obstructions by the predecessor in interest of the plaintiff in error.

We think a complete answer to that contention is that the injury which constituted the cause of action of the defendants in error did not occur until the last days of December, 1917, and the first days of January, 1918, and the present action was begun in the month of August of the latter year. It is in our opinion obvious that until

the injury complained of was inflicted no cause of action for damages existed. It is not pretended that the bridge over the Cœur d'Alene river, or the approaches thereto, or the shear dam, were constructed on the land now owned by the defendants in error, and it cannot be doubted, we think, that, had its then owner sought to prevent the predecessor in interest of the plaintiff in error from constructing the bridge, or the shear dam, or the piling, or fills, he would have been met with the conclusive objection that it was none of his business, and that it would be time enough for him to complain when he was injured thereby; and so it was held in effect by the Supreme Court of Idaho in the case above cited, in which an action was sustained for damages to this same land, occasioned by an overflow of the water of the river in the year 1913, caused by the impediments that have been mentioned.

[2] The contention that the freshet that caused the injury here involved was so unprecedented as to be properly considered by the court as an act of God is equally without merit. It is readily conceded, as a matter of course, that no person or corporation is or can be liable for an act of God. But one or two suggestions are sufficient, we think, to show that the freshet involved in the present case cannot be properly so regarded. First and foremost, the predecessor in interest of the plaintiff in error, when it built the piling and permanent embankment across the overflow channel of the river, thereby preventing that channel from carrying off any of the flow of the main channel, and when the plaintiff in error acquired its interest and maintained the property in the same condition, both had ocular demonstration of the fact that there had previously been such freshets as could not be carried in the main channel, the overflow of which had theretofore cut the overflow channel, and with such knowledge the latter was blocked.

Then, too, while we have no doubt, from the evidence in this case, that the freshet that caused the damage here involved was much more severe than the one that occurred in 1913, involved in the case of Rogers v. Oregon-Washington R. & Nav. Co., supra, the water of the river was in each instance of such large volume that the space and main channel of the river left open by these railroad companies was not sufficient to carry it off, and the impediments constructed and maintained by them caused the overflow and injury in each case complained of.

No other point, we think, requires special mention.

The judgment is affirmed.